# VALERIE O'HALPIN *v.* JAMES O'HALPIN
## (AC 34485)

DiPentima, C. J., and Gruendel and Alvord, Js.

Argued April 9—officially released August 6, 2013

*James H. Lee*, with whom, on the brief, was *Valerie O'Halpin*, self-represented, for the appellant (plaintiff).

*Samuel V. Schoonmaker IV*, with whom, on the brief, was *Wendy Dunne DiChristina*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Valerie O'Halpin, appeals from the judgment of the trial court dissolving her marriage to the defendant, James O'Halpin. The plaintiff claims that the court improperly (1) failed to hold the defendant accountable for his discovery misconduct, (2) refused to admit evidence of the defendant's dissipation of marital assets prior to their separation and (3) modified the property award postjudgment by ordering the sale of the former marital residence at a reduced price. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. The parties were married in New York City on May 7, 1989. It was the second marriage for the plaintiff and the defendant, and both had grown children from their prior marriages. The defendant retired from his own business in 2004, and the parties traveled extensively from 2004 until their separation in 2009 when the defendant left the marital home. During that period of time, the parties lived largely in excess of their means. The plaintiff commenced this dissolution action on July 2, 2009,[1] and nearly all of the marital assets had been spent by the

---

[1] The plaintiff was represented by counsel for nearly two years. On May 6, 2011, the plaintiff became self-represented. She represented herself during the proceedings before Judge Malone and during the trial before Judge Emons. She continued to represent herself at the time that she filed her appeal, her initial appellate brief and her reply brief. The issues on appeal, as set forth in this opinion, are as framed in the plaintiff's briefs. On April 5, 2013, Attorney James Lee was granted permission to file an appearance on behalf of the plaintiff, in addition to the plaintiff's appearance already on file, and he argued the appeal before this court on April 9, 2013.

time the case came to trial in October, 2011. The primary asset remaining was the marital residence located in Stamford.

While this action was pending between July, 2009, and October, 2011, the parties filed numerous pendente lite motions, including, inter alia, motions for compliance and motions for contempt. A discovery master was appointed by the court on June 29, 2010. A few months prior to the scheduled dissolution trial, several motions remained outstanding. The court, *Malone, J.*, was to rule on the discovery issues before the trial commenced, and he heard evidence pertaining to those issues on June 30, August 19, September 30, and the morning of October 4, 2011. After Judge Malone issued his rulings on, inter alia, discovery, the matter immediately proceeded to trial before the court, *Emons, J.* The trial on the remaining financial issues concluded on October 18, 2011. The parties were afforded the opportunity to submit posttrial briefs, and, on February 28, 2012, the court rendered judgment dissolving the parties' twenty-two year marriage.

In its memorandum of decision, the court found that the marriage had broken down irretrievably, and the court attributed fault to both parties. The court ordered, inter alia, that no alimony was to be awarded to either party and that each party was responsible for his or her own counsel fees. With respect to the marital residence in Stamford, the court directed that the property was to be listed for sale immediately and that the property was to be sold as soon as practicable. Further, the court ordered the parties to accept the real estate broker's advice as to the initial listing price and to accept a bona fide offer from any unrelated third party that was within 5 percent of the current listing price. The court additionally specified that "[t]he parties shall reduce the listing price no less than 3 [percent] every forty-five (45) days until such time as the property is

sold." (Emphasis omitted.) The court expressly retained jurisdiction over the sale of the marital residence.

After the plaintiff's motion for reargument and reconsideration was denied by the court, the plaintiff filed her appeal on April 4, 2012. On May 24, 2012, the defendant filed a postjudgment motion that requested that the court reduce the current listing price of the marital residence. At the hearing on this motion, the defendant's counsel stated that the motion related directly to the court's order in the dissolution judgment with respect to the sale of the real property. The plaintiff countered that reducing the purchase price would be an impermissible modification of the initial property award. The court responded that, in its February 28, 2012 memorandum of decision, it had provided for reducing the listing price in forty-five day increments until the marital residence was sold. After the court confirmed with the parties that the property had not been sold, the defendant's counsel called the listing broker to the witness stand. During her testimony, the broker recommended that the listing price be reduced from $1,259,000 to $999,000.

Following the evidentiary hearing, the court ordered that the listing price immediately was to be reduced to $1,100,000. The court further ordered that if the marital residence did not sell within thirty days, the listing price was to be reduced to $999,000, and, thereafter, the listing price was to be reduced every forty-five days by 3 percent until the property sold. The plaintiff subsequently amended her appeal, claiming that the court's July 23, 2012 ruling was an improper modification of the initial property award.

I

The plaintiff's first claim is that the trial court abused its discretion by failing to hold the defendant accountable for his discovery misconduct. She claims that she

incurred "extraordinary" legal expenses in seeking mandated discovery information from the defendant. She further argues that she filed several motions pertaining to these discovery issues that were not addressed by Judge Malone during the proceedings prior to trial or by Judge Emons during the trial. According to the plaintiff, the court should have ordered the defendant to pay her attorney's fees because of his egregious discovery misconduct. See *Berzins* v. *Berzins*, 306 Conn. 651, 658, 51 A.3d 941 (2012); *Ramin* v. *Ramin*, 281 Conn. 324, 351, 915 A.2d 790 (2007).

The defendant maintains that there are no court orders or determinations that would support an award of attorney's fees for discovery misconduct. Furthermore, the defendant claims that Judge Malone addressed the plaintiff's allegations of discovery noncompliance during the four day hearing conducted prior to the trial. The defendant argues that Judge Emons properly refused to rehear the issues resolved by Judge Malone. The plaintiff, during the trial before Judge Emons and at oral argument before this court, disagreed with that representation. She insists that Judge Malone did not address all of her discovery claims.

The plaintiff did not order transcripts of the proceedings held before Judge Malone on June 30, August 19 and September 30, 2011.[2] Without those transcripts, it is impossible for us to determine exactly what issues were resolved by Judge Malone over the course of the four day hearing on discovery issues. "It is an appellant's duty to provide an adequate record for our review, including the transcript and an electronic version of the transcript. See Practice Book §§ 61-10 [and] 63-8 . . . ." *Perez* v. *D & L Tractor Trailer School*, 117 Conn.

---

[2] The record reflects that the plaintiff did order a transcript of the October 4, 2011 hearing before Judge Malone. That was the last day, however, of a four day hearing on the outstanding motions addressed to discovery issues.

App. 680, 691, 981 A.2d 497 (2009), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010). Without the transcripts of the entire four day hearing before Judge Malone, we are unable to discern the content of the prior proceedings or to conduct a meaningful review of the plaintiff's first claim on appeal. See *State* v. *Germain*, 142 Conn. App. 805, 807–808, 65 A.3d 536 (2013).

## II

The plaintiff's next claim is that the trial court improperly refused to admit evidence that she offered to prove the defendant's dissipation of the marital assets prior to their separation. The plaintiff claims that she had intended to show, by documentary evidence and her testimony, that the defendant had closed their joint savings and checking accounts, cashed in two life insurance policies and sold shares of Prudential stock. She argues that he diverted the marital income and savings into new accounts held solely by him or jointly with his daughter in anticipation of the separation and divorce. The defendant claims that Judge Malone addressed the plaintiff's dissipation of marital assets claim; the plaintiff disagrees and claims that Judge Emons improperly refused to consider her evidence during the trial.[3]

We are unable to address this claim of the plaintiff for the same reason set forth in part I of this opinion. Without the transcripts of June 30, August 19 and September 30, 2011, we cannot discern what issues were resolved by Judge Malone with respect to the plaintiff's

---

[3] During the trial before Judge Emons on October 4, 2011, when the plaintiff and the defendant disagreed as to what dissipation claims had been addressed by Judge Malone, Judge Emons asked the plaintiff: "Well, are you requesting that I read the transcript [from Judge Malone's proceedings] because if I have to go read the transcript and delay this trial and find out that [the defendant's] counsel is correct, you are going to find one pretty angry judge sitting up here." The plaintiff responded: "Well then—no, I don't want—I certainly don't want that."

dissipation claims.[4] Accordingly, we cannot conduct a meaningful review of the plaintiff's second claim on appeal. See *State* v. *Germain*, supra, 142 Conn. App. 807–808.

## III

The plaintiff's final claim is that the court improperly granted the defendant's postjudgment motion to reduce the listing price of the marital residence. She argues that the court's ruling was an improper modification of the initial property award. We disagree.

As previously discussed, the court provided for the sale of the marital residence in its memorandum of decision issued February 28, 2012. The court, anticipating that the property might not sell at the price preferred by the parties, ordered that it be listed at the price advised by the broker and specified that the initial price was to be reduced "no less than 3 [percent] every forty-five (45) days until such time as the property is sold." (Emphasis omitted.) The court expressly retained jurisdiction over the sale of the marital residence.

We conclude that the court's July 23, 2012 ruling was an effectuation of the court's original distribution of the marital property rather than an improper postjudgment modification. "A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith.

"Although the court does not have the authority to modify a property assignment, a court, after distributing

---

[4] We do note that Judge Malone expressly found, at the conclusion of the October 4, 2011 hearing, that the defendant properly expended $340,000 claimed as marital assets by the plaintiff.

property, which includes assigning the debts and liabilities of the parties, does have the authority to issue postjudgment orders effectuating its judgment. . . . Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged. . . . Thus, if the . . . motion . . . can fairly be construed as seeking an effectuation of the judgment rather than a modification of the terms of the property settlement, this court must favor that interpretation." (Citations omitted; internal quotation marks omitted.) *Fewtrell* v. *Fewtrell*, 87 Conn. App. 526, 531–32, 865 A.2d 1240 (2005).

"[W]e have recognized that it is within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Buehler* v. *Buehler*, 138 Conn. App. 63, 76, 50 A.3d 372 (2012). In comparing the provisions of the original judgment with respect to the sale of the marital residence with the July 23, 2012 ruling reducing the listing price; see *Stechel* v. *Foster*, 125 Conn. App. 441, 447, 8 A.3d 545 (2010), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011); we conclude that the court's postjudgment ruling effectuated rather than modified the original property distribution.

The judgment is affirmed.

In this opinion the other judges concurred.